# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | |
|---|---|
| JESSIE DE LEON, Individually and for Others Similarly Situated,<br><br>v.<br><br>NORTHERN NATURAL GAS COMPANY | Case No. 7:20-cv-00179<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

## ORIGINAL COMPLAINT

### SUMMARY

1. Jessie De Leon (De Leon) brings this Fair Labor Standards Act (FLSA) lawsuit to recover the unpaid overtime wages and other damages owed to him by Northern Natural Gas Company (Northern).

2. De Leon and the other Northern employees regularly work more than 40 hours in a week.

3. But Northern does not pay them overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime, De Leon received a daily rate with no overtime compensation.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court because Northern conducts substantial business in this District and Division.

7. De Leon performed work for Northern in in this District and Division.

## THE PARTIES

8. De Leon worked for Northern from July 2017 until April 2018.

9. De Leon was an inspector for Northern.

10. De Leon worked for Northern throughout the United States including, Texas, Kansas, Nebraska, Michigan, and Iowa.

11. Throughout his employment with Northern, De Leon was paid a day-rate with no overtime compensation.

12. De Leon's consent to be a party plaintiff is attached as Exhibit A.

13. De Leon brings this action on behalf of himself and all other similarly situated workers who were paid by Northern's day-rate scheme.

14. Each of these workers were paid a flat amount for each day worked and Northern failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All inspectors of Northern who were paid a day-rate with no overtime in the past 3 years (Putative Class Members).**

16. The Putative Class Members are easily ascertainable from Northern's business records.

17. Northern may be served by serving their registered agent for service of process, CT Corporation System, 199 Bryan St., Suite 900 Dallas, TX 75201.

## COVERAGE UNDER THE FLSA

18. At all times hereinafter mentioned, Northern has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19. At all times hereinafter mentioned, Northern has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20. At all times hereinafter mentioned, Northern has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.

21. At all times hereinafter mentioned, De Leon and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22. As will be shown through this litigation, Northern treated De Leon the Putative Class Members as employees and uniformly dictated the pay practices De Leon and its other employees were subjected to.

## FACTS

23. Northern provides natural gas transportation and storage services to 81 utilities and numerous producers, energy marketing companies and industrial end users. It also provides grid transportation between other interstate and intrastate pipelines, and access to major North American gas supply basins in Canada, the Rocky Mountains, the MidContinent and Permian Basins, and major shale gas developments.

24. To provide its services, Northern hires inspectors (like De Leon) to perform work.

25. Many of these inspectors worked for Northern on a day-rate basis and make up the proposed Putative Class.

26. These inspectors perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

27. Because of Northern's day-rate pay practice, De Leon and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

28. Because of Northern's day-rate pay practice De Leon and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

29. For example, throughout De Leon's employment with Northern, he was paid on a day-rate basis.

30. De Leon and the Putative Class Members normally worked 12 or more hours a day.

31. De Leon and the Putative Class Members would regularly work 7 days a week.

32. Northern never guaranteed De Leon and the Putative Class Members a salary.

33. Northern never paid De Leon or the Putative Class Members on a salary basis.

34. De Leon was required to report the days worked to Northern.

35. The work De Leon performed was an essential and integral part of Northern's core business.

36. Northern directly determined De Leon and the Putative Class Members' rates of pay and his work schedule.

37. The Putative Class Members worked hours similar to De Leon's.

38. During De Leon's employment with Northern, it and/or the company Northern contracted with exercised control over all aspects of his job.

39. Northern and/or the company it contracted with, controlled all the significant or meaningful aspects of the job duties performed by De Leon and the Putative Class Members.

40. Northern controlled all aspects of De Leon's job duties by enforcing mandatory compliance with Northern's policies and procedures.

41. Northern directly determined De Leon's rates of pay and his work schedule while he was working for Northern.

42. The Putative Class Members were denied overtime by the same illegal pay practice (Northern's day-rate pay scheme) that resulted in De Leon being denied overtime wages.

43. Northern's policy of failing to pay its employees, including De Leon, overtime violates the FLSA because these workers are non-exempt.

44. Northern's day-rate scheme violates the FLSA because De Leon and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

45. As set forth herein, Northern has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

46. Northern knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

47. Northern's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

48. Accordingly, De Leon and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### COLLECTIVE ACTION ALLEGATIONS

49. De Leon incorporates all previous paragraphs and alleges that the illegal pay practices Northern imposed on De Leon were likewise imposed on the Putative Class Members.

50. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

51. Numerous other individuals who worked with De Leon indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

52. Based on his experiences and tenure with Northern, De Leon is aware that Northern's illegal practices were imposed on the Putative Class Members.

53. The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

54. Northern's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

55. De Leon's experiences are therefore typical of the experiences of the Putative Class Members.

56. The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

57. De Leon has no interests contrary to, or in conflict with, the Putative Class Members.

58. Like each Putative Class Member, De Leon has an interest in obtaining the unpaid overtime wages owed to him under the FLSA.

59. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

60. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Northern will reap the unjust benefits of violating the FLSA.

61. Furthermore, even if some of the Putative Class Members could afford individual litigation against Northern, it would be unduly burdensome to the judicial system.

62. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

63. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether Northern employed the Putative Class Members within the meaning of the FLSA;

   b. Whether Northern's day rate pay scheme meets the salary-basis test;

   c. Whether Northern's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

   d. Whether Northern's violation of the FLSA was willful; and

   e. Whether Northern's illegal pay practices were applied uniformly to all Putative Class Members.

64. De Leon's claims are typical of the claims of the Putative Class Members. De Leon and the Putative Class Members sustained damages arising out of Northern's illegal and uniform employment policy.

65. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

66. Therefore, this issue does not preclude class or collective action treatment.

### JURY DEMAND

67. De Leon demands a trial by jury.

## RELIEF SOUGHT

68. WHEREFORE, De Leon prays for judgment against Northern as follows:

 a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

 b. For an Order pursuant to Section 16(b) of the FLSA finding Northern liable for unpaid back wages due to De Leon and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

 c. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

 d. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
State Bar No. 24056278
**Josephson Dunlap, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Fed. Id. 21615
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**